**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| ANNA GERRARD, ALEXA LUBOMSKI, and SARA LAMB, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CREDENCE MANAGEMENT SOLUTIONS, LLC,<br><br>Defendant. | Cause No. 1:25-cv-952 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL, ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

## Table of Contents

**I. BACKGROUND** ........ 1

**II. THE SETTLEMENT TERMS** ........ 2

**III. THE NOTICE PROGRAM** ........ 2

**A. The Notice Program** ........ 3

**B. Exclusions and Objections** ........ 3

**IV. ARGUMENT** ........ 3

**A. The Settlement is Fair and Adequate** ........ 4

**i. The Settlement is Fair** ........ 4

**ii. The Settlement is Adequate** ........ 7

**iii. Final Certification of the Settlement Class Is Appropriate** ........ 15

**B. Class Counsel is Entitled to an Award of Reasonable Attorneys' Fees** ........ 15

**C. Class Counsel's Costs are Reasonable and Should be Awarded** ........ 20

**D. The Proposed Service Awards are Reasonable** ........ 21

**V. CONCLUSION** ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abrams & Abrams, P.A.*,
605 F.3d 238 (4th Cir. 2010) ....................17

*In re Altria Grp., Inc.*,
No. 3:20CV772 (DJN), 2023 WL 2116803 (E.D. Va. Feb. 20, 2023) ....................16

*Assif v. Titleserv, Inc.*,
CV 11-3203, 2014 WL 12843780 (E.D.N.Y. Aug. 25, 2014) ....................18

*In re AWTR Liquidation, Inc.*,
No. 213-bk-13775-NB ....................18

*Beaulieu v. EQ Indus. Servs.*,
No. 5:06-CV-400-BR ALL, 2009 U.S. Dist. LEXIS 133023 (E.D.N.C. Apr. 20, 2009) ....................4

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015) ....................3, 14, 17, 21

*Boeing Co. v. Van Gemert*,
444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) ....................15

*Brown v. Transurban USA, Inc.*,
318 F.R.D. 560 (E.D. Va. 2016) ....................7

*Bryan v. Pittsburgh Plate Glass Co.*,
494 F.2d 799 (3d Cir. 1974) ....................14

*Casa de Md., Inc. v. Arbor Realty Tr., Inc.*,
No. DKC 21-1778, 2024 U.S. Dist. LEXIS 41935 (D. Md. Mar. 11, 2024) ....................21

*Chambers v. Groome Transp. of Ala., Inc.*,
No. 3:14CV237-CSC (WO), 2015 WL 9255332 (M.D. Ala. Dec. 17, 2015) ....................19

*Ciarciello v. Bioventus Inc.*,
760 F. Supp. 3d 377 (M.D.N.C. 2024) ....................20

*Decohen v. Abbasi, LLC*,
299 F.R.D. 469 (D. Md. 2014) ....................6, 19, 20

*In re Dollar Gen. Stores FLSA Litig.*,
2011 U.S. Dist. LEXIS 98162 (E.D.N.C. Aug. 22, 2011) ....................7

*Donaldson v. Primary Residential Mortg.*,
No. ELH-19-1175, 2021 U.S. Dist. LEXIS 101625 (D. Md. May 28, 2021)............................4

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)..........................................................................................................3

*Feinberg v. T. Rowe Price*,
610 F. Supp. 3d 758 (D. Md. 2022)....................................................................................20

*In re Genworth Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ..........................................................................16, 17

*Gilbert LLP v. Tire Eng'g & Distribution, LLC*,
689 F. App'x 197 (4th Cir. 2017)........................................................................................17

*Guippone v. BH S. & B. Holdings*,
LLC, No. 09 Civ. 1029 (CM), 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011).........................18

*Guippone v. BH S&B Holdings LLC*,
No. 09 CIV. 01029 (CM), 2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016).............................19

*Hooker v. Sirius XM Radio, Inc.*,
No. 4:13–CV–003, 2017 WL 4484258 (E.D. Va. May 11, 2017)..........................................16

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ...................................................................................4, 8, 14

*Jones v. Dominion Res. Servs., Inc.*,
601 F. Supp. 2d 756 (S.D.W. Va. 2009)..............................................................................16

*Kelly v. Johns Hopkins Univ.*,
No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772 (D. Md. Jan. 28, 2020) ....................21

*Kirkpatrick v. Cardinal Innovations*,
352 F. Supp. 3d 499 (M.D.N.C. 2018) ................................................................................20

*Knapp v. Badger Technologies, Inc.*,
No. 12–CV–6637–CJS–MWP, 2015 WL 3745303 (W.D.N.Y. June 15, 2015) .....................18

*Lazy Oil Co. v. Witco Corp.*,
95 F. Supp. 2d 290 (W.D. Pa. 1997)....................................................................................14

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
No. 1:08-cv-1310, 2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ............................................4

*Lowe v. Mid-Atlantic Coca-Cola Bottling Co.*,
33 Va. Cir. 361 (Va. Cir. Ct. 1994).......................................................................................17

*In re Lumber Liquidators*,
27 F.4th 291 (4th Cir. 2022) ....................................................................................20

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ......................................................................................4

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
No. 3:14cv238 (DJN), 2016 U.S. Dist. LEXIS 33708 (E.D. Va. Mar. 15, 2016) ..........................................................................................................................20

*Matthews v. Cloud 10 Corp.*,
No. 4:13-cv-646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586 (W.D.N.C. Aug. 27, 2015) (unpublished) .................................................................................................7

*McCune v. Faneuil Inc.*,
No. 4:23-CV-41, 2024 WL 3811411 (E.D. Va. Aug. 13, 2024) .......................................19, 20

*McDonnell v. Miller Oil Co.*,
134 F.3d 638 (4th Cir. 1998) ......................................................................................16

*Mees v. Skreened, Ltd.*,
No. 2:14-cv-142, 2016 WL 67521 (S.D. Ohio Jan. 6, 2016)...........................................18

*In re Novant Health, Inc.*,
No. 1:22-CV-697, 2024 U.S. Dist. LEXIS 107949 (M.D.N.C. June 17, 2024) ........................5

*Robinson v. Carolina First Bank NA*,
No. 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 26450 (D.S.C. Feb. 14, 2019) ..........................................................................................................................13

*Robinson v. Nationstar Mortg. LLC*,
No. 8:14-CV-03667-TJS, 2020 U.S. Dist. LEXIS 262890 (D. Md. Aug. 19, 2020) ..........................................................................................................................13

*Roldan v. Bland Landscaping Co.*,
No. 3:20-cv-00276-KDB-DSC, 2022 U.S. Dist. LEXIS 227906 (W.D.N.C. Dec. 19, 2022)..................................................................................................4, 5

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
461 F. Supp. 2d 383 (D. Md. 2006) ...........................................................................20

*Savani v. URS Prof'l Solutions LLC*,
121 F. Supp. 3d 564 (D.S.C. 2015).............................................................................20

*Seaman v. Duke Univ.*,
No. 1:15-CV-462, 2018 U.S. Dist. LEXIS 13400 (M.D.N.C. Jan. 4, 2018) ..........................13

*Solomon v. Am. Web Loan, Inc.*,
No. 4:17-cv-145, 2020 U.S. Dist. LEXIS 112782 (E.D. Va. June 26, 2020) .......................... 13

*In re The Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ........................................................................ 7, 19

*United States v. Manning Coal Corp.*,
977 F.2d 117 (4th Cir. 1992) .............................................................................. 3

*In re Vitamins Antitrust Litig.*,
No. 99-197 (TFH), 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 30, 2000) .............................. 5

*West v. Cont'l Auto., Inc.*,
No. 3:16-cv-00502-FDW-DSC, 2018 U.S. Dist. LEXIS 26404 (W.D.N.C. Feb. 5, 2018) ........................................................................ 5, 6

**Statutes**

29 U.S.C. § 2103(1) ........................................................................ 9

29 U.S.C. § 2104(a)(1) ........................................................................ 2

29 U.S.C. § 2104(a)(6) ........................................................................ 12, 18

WARN Act ........................................................................ 2, 7, 9, 11, 12, 15, 17, 18

**Rules**

20 C.F.R. § 639.5(c)(2) ........................................................................ 9

Executive Order No. 14169, *Reevaluating and Realigning United States Foreign Aid* ........................................................................ 10

Fed. R. Civ. P. 23 ........................................................................ 2

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................ 3

Fed. R. Civ. P. 23(e)(2)(ii) ........................................................................ 14

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................ 14

Rule 23(a) and (b)(3) ........................................................................ 15

Rule 23(e)(2) ........................................................................ 3, 4, 14

Rule 23(e)(2)(A) ........................................................................ 14

Rule 23(e)(2)(B) ........................................................................ 7

Rule 23(e)(2)(C)(iii)....................15

Rule 23(h) ....................20

Plaintiffs Anna Gerrard, Alexa Lubomski, and Sara Lamb, individually and on behalf of all others similarly situated ("Class Members" or "putative Class Members"), respectfully submit this memorandum in support of their Motion for Final Approval, Attorneys' Fees, Costs, and Service Awards.

## I. BACKGROUND

Plaintiffs incorporate the factual background set forth in their Motion for Preliminary Approval (ECF No. 39). For final approval purposes, however, several facts bear emphasis.

After Plaintiffs filed suit, Defendant filed its Answer. ECF No. 7. The Answer asserted that Plaintiffs worked on a temporary USAID-funded contract and that their employment ended when USAID abruptly issued a stop-work order and later terminated the contract. *Id*. at PageID# 39–40 (Fifth Affirmative Defense). Defendant further asserted the WARN Act's unforeseeable business circumstances exception, contending it could not reasonably have anticipated the loss of its USAID work. *Id*. at PageID# 38, 40–42 (First, Fifth, Sixth, and Eighth Affirmative Defenses). Discovery produced evidence supporting the defense. In January 2025, USAID issued contract modifications that added more than $77 million to Defendant's contract, funding work through at least September 2025. Stranch Decl. ¶ 4(a). Yet, within days of President Trump's issuance of Executive Order 14169, USAID issued an immediate stop-work order on January 27, 2025, and subsequently terminated the contract. *Id*. Defendant contends it received no advance warning and was forced to issue termination notices the following day because it could no longer perform or fund the contract work. *Id*.

Given the sudden and unprecedented nature of the stop-work order, the substantial funding that had been added only days earlier, and the fact that Plaintiffs worked exclusively on the affected USAID contract, Defendant's unforeseeable business circumstances defense, among others, presents a significant obstacle to recovery. Stranch Decl. ¶¶ 11–12. After reviewing thousands of

pages of discovery and consideration of the evidence supporting the defenses that Defendant has asserted, Plaintiffs recognized the risks associated with continued litigation and began discussing the potential for Settlement. *Id.* ¶¶ 4(a), 11–12. Ultimately, the Parties reached a settlement that serves the Parties' respective interests and the interests of the Class. *Id.* ¶¶ 5–6.

## II. THE SETTLEMENT TERMS

The Settlement provides significant relief to participating Class Members through a direct cash payment. Defendant will pay $139,000.00 into a common fund ("Settlement Fund"). ECF No. 40–4, PageID 570. Following the payment of any service awards, attorneys' fees, expenses, and reasonable costs of Settlement Administration, the Settlement Fund will provide Class Members with cash payments. *Id.* at PageID 570–71. The Allocation Plan is simple and directly tied to the WARN Act's damages scheme. *See* 29 U.S.C. § 2104(a)(1); Stranch Decl. ¶ 16. Each Settlement Class Member will be entitled to 60 days' back pay (calculated according to the Member's daily wage rate), one day per alleged WARN Act violation, divided by the total back pay owed to the entire Settlement Class for 60 days, multiplied by the Net Settlement Fund. Stranch Decl. ¶ 16.

If approved, the requested Service Awards for the Class Representatives would be paid out of the Settlement Fund. ECF No. 40-4, PageID 570–71. Further, Class Counsel seeks an award of attorneys' fees of up to 33% of the Settlement Fund, or $45,870.00, and for costs totaling $715.80 (to date), and a service award of $500.00 each to the Named-Plaintiffs, pursuant to the terms of the Agreement. Stranch Decl. ¶¶ 10, 17, 22.

## III. THE NOTICE PROGRAM

Before final approval can be granted, Due Process and Fed. R. Civ. P. 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

**A. The Notice Program**

The notice program successfully reached the Settlement Class. Defendant provided CPT Group with class data for 278 Class Members, and CPT mailed Court-approved notice to all identified Class Members. Admin. Decl. ¶¶ 6, 8. Through address updating, skip tracing, and re-mailing efforts, CPT ultimately achieved delivery to all identified Class Members. *Id.* ¶¶ 7, 9–10. As of June 8, 2026, CPT had received 52 requests for exclusion and one objection to the Settlement. *Id*. ¶¶ 11–12. CPT also estimates that participating Class Members will share a Net Settlement Amount of $78,630.00 after deductions for Court-approved fees, costs, service awards, and administration expenses. *Id*. ¶ 15.

**B. Exclusions and Objections**

The last day of the Opt-Out and Objection Periods was May 29, 2026. Admin. Decl. ¶ 8. Out of 278 Settlement Class Members, fifty-two Settlement Class Members have opted out of the Settlement, and one has objected. *Id*. ¶¶ 11–12.

## IV. ARGUMENT

As a matter of public policy, settlement is a highly favored means of resolving disputes, particularly in complex cases where substantial judicial resources can be conserved by avoiding further litigation. *See* 2 Herbert Newberg and Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41, at 11–85 (2d ed.1992) (citing cases); *see also United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). Rule 23(e)(2) provides that a proposed settlement may be approved only after a hearing and on a determination that it is fair, reasonable, and adequate: a task left to the sound discretion of the court. *See Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015). In determining whether a

settlement is fair, reasonable, and adequate, the court must consider the factors set forth in Fed. R. Civ. P. 23(e)(2). These factors "almost completely overlap" with those traditionally used by the Fourth Circuit, as set forth in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). *See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020). Because Plaintiffs readily satisfy these factors, final approval is warranted in this matter.

**A. The Settlement is Fair and Adequate**

The Fourth Circuit applies a multi-factor test from *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) and *In re Lumber Liquidators*, 952 F.3d at 471, and bifurcate the (fair, reasonable, and adequate) "analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided to the class members is sufficient." *Beaulieu v. EQ Indus. Servs.*, No. 5:06-CV-400-BR ALL, 2009 U.S. Dist. LEXIS 133023, at *68–69 (E.D.N.C. Apr. 20, 2009) (*citing In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158–59; *accord Roldan v. Bland Landscaping Co.*, No. 3:20-cv-00276-KDB-DSC, 2022 U.S. Dist. LEXIS 227906, at *4–5 (W.D.N.C. Dec. 19, 2022). These overlap almost completely with the Rule 23(e)(2) factors.

**i. The Settlement is Fair**

There is a strong presumption in favor of finding a settlement fair. *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (quotation marks and citation omitted). Courts apply a four-factor test to ascertain the fairness of a proposed settlement, to wit: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *Donaldson v. Primary Residential Mortg.*, No. ELH-19-1175, 2021 U.S. Dist. LEXIS 101625, at

*9 (D. Md. May 28, 2021) (*quoting In re Lumber Liquidators*, 952 F.3d at 484 (*citing In re Jiffy Lube*, 927 F.2d at 159)). In the instant case, Plaintiffs have satisfied all four (4) factors.

***The Posture of the Case at the Time Settlement Was Proposed.*** For this factor, the pertinent inquiry is whether a plaintiff "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *West v. Cont'l Auto., Inc.*, No. 3:16-cv-00502-FDW-DSC, 2018 U.S. Dist. LEXIS 26404, at *10–11 (W.D.N.C. Feb. 5, 2018). Here, Plaintiffs filed their respective Complaint after being terminated by their employer, the Defendant. Stranch Decl. ¶¶ 4–6; ECF No. 1. Plaintiffs conducted a substantial pre-complaint investigation and obtained sufficient discovery to evaluate the strengths and weaknesses of the claims and defenses, including payroll records, termination data, and documents relating to Defendant's unforeseeable business circumstances defense. Stranch Decl. ¶¶ 4, 4(a). After reviewing the discovery, the Parties discussed the potential for early resolution. Stranch Decl. ¶¶ 5–6. During these discussions, the Parties exchanged information regarding the terminations at issue and the risks associated with continued litigation, which informed their settlement negotiations. *Id*. ¶¶ 4(a), 11–12. Thereafter, the Parties continued negotiations and finalized the terms of the Settlement Agreement. *Id*. ¶ 5. Thus, the Settlement is the result of extensive and informed arm's-length negotiations. *Id*. ¶¶ 5–6. Considering that settlement is to be encouraged and a trial would be costly and complex with uncertain results, the litigation's posture at the time of the Settlement supports a finding of fairness. *Roldan*, 2022 U.S. Dist. LEXIS 227906, at *6–7; *In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2000 U.S. Dist. LEXIS 8931, at *23 (D.D.C. Mar. 30, 2000) (noting that courts favor early settlement); *In re Novant Health, Inc.*, No. 1:22-CV-697, 2024 U.S. Dist. LEXIS 107949, at *17 (M.D.N.C. June 17, 2024) (finding the factor satisfied in a data privacy case that settled before resolution of a motion to dismiss and formal discovery);

*Alloways*, 2019 U.S. Dist. LEXIS 71481, at *25 (granting final approval of case in the "relatively early stages of litigation").

***The Extent of Discovery that Had Been Conducted.*** The Parties conducted substantial investigations into the terminations and surrounding circumstances, engaged in formal discovery, and participated in meaningful discussions regarding the merits of the case before reaching the Settlement. Stranch Decl. ¶¶ 4, 12. During discovery, Defendant produced thousands of pages of documents supporting its unforeseeable business circumstances defense, among other defenses, demonstrating the significant litigation risks facing Plaintiffs. *Id.* ¶ 4(a). The Parties then engaged in substantial discussions regarding Plaintiffs' claims, Defendant's asserted defenses, and the evidence developed through discovery. *Id.* ¶¶ 5–6. Those discussions continued over several months and included the exchange and evaluation of critical information regarding the circumstances of the layoffs at issue. *Id.* ¶¶ 5, 11–12.

Courts in the Fourth Circuit have held that a settlement may be fair even where formal discovery is incomplete, so long as the parties had "sufficient development of the facts to permit an accurate assessment of the merits." *Decohen v. Abbasi*, LLC, 299 F.R.D. 469, 480 (D. Md. 2014). Here, the discovery completed, the Parties' informed negotiations, and Class Counsel's experienced assessment of the litigation risks all support final approval.

***The Circumstances Surrounding the Negotiations.*** As discussed above, prior to filing the Complaint, Plaintiffs' Counsel conducted an extensive investigation into the facts. Stranch Decl. ¶¶ 9, 12. Although the Parties did not initially reach an agreement, they continued negotiating from October 2025 to November 2025 and ultimately reached a full settlement agreement on November 7, 2025. Stranch Decl. ¶ 5; *see, e.g., West*, 2018 U.S. Dist. LEXIS 26404, at *12 ("The Settlement was not hastily arrived at. Indeed, the Settlement followed lengthy discussions and

considerable dialogue between the Parties, as well as arms-length negotiations involving extensive argument and counterargument."); *Matthews v. Cloud 10 Corp.*, No. 4:13-cv-646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586, at *8 (W.D.N.C. Aug. 27, 2015) (unpublished); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011). The extensive negotiations described above demonstrate that the Settlement was the product of informed, arm's-length negotiations and therefore satisfies Rule 23(e)(2)(B).

***The Experience of Counsel.*** Class Counsel are highly experienced in consumer class actions and WARN Act cases. Stranch Decl. ¶ 13. Class Counsel's specialized knowledge and experience in this niche facet of the law placed them in a superior position to weigh the strengths and weaknesses in this case and, ultimately, arrive at the most favorable settlement for the Class. Stranch Decl. ¶ 13; *see Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 573 (E.D. Va. 2016) (counsel's "wealth of experience and knowledge in consumer-protection class actions" supported the settlement's fairness). Consequently, it is "entirely warranted" for this Court to "pay heed to" experienced Class Counsel's judgment that the Settlement is in the best interest of the Class. *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009).

**ii. The Settlement is Adequate**

The evaluation of adequacy requires the court to "weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983). In addition to the additional requirement under the 2018 amendment of 23(e)(2), courts consider the following factors with respect to adequacy: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants

and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159. The instant Settlement satisfies the above-referenced criteria and is therefore adequate.

***The Relative Strength of Plaintiffs' Case and Applicable Defenses.*** While Class Counsel believes in the merits of Plaintiffs' claims, they also recognize the risks, costs, and time involved in prosecuting the case through the exhaustion of all appeals. *See* Stranch Decl. ¶¶ 11–12, 20. Should the case continue, the Parties would engage in costly discovery, dispositive motion practice, and a trial. *Id.* Considering the inherent uncertainty of litigation, if this case were to proceed, there is also a not-insubstantial probability that Class Members would receive significantly truncated benefits, or none.

Indeed, Defendant has advanced substantive defenses throughout the litigation that affects this probability directly. Defendant noted that Plaintiffs were employed "on a temporary project, i.e., a government contract for which they would be employed by Defendant only for the duration of that contract." Defendant explained: "Upon USAID's issuance of a stop work order for that project, the project ended as to Plaintiffs' work, and Defendant could no longer employ them." Defendant also raised the defense of unforeseen business circumstances. Specifically, Defendant noted that "Plaintiff worked for Defendant on a federal government contract with USAID which had a lengthy additional anticipated performance period remaining at all relevant times." Within days of Donald Trump returning to the White House, the Administration shut down USAID, and USAID began to self-terminate or stop work on federal government contracts with that agency. As Defendant noted, it could not have reasonably anticipated, "that it would lose its USAID contracts at all, let alone so soon after the transition of Presidential Administrations, or that USAID would issue full and immediate stop work orders on its contract mere days after the new Administration

took office." Indeed, the closing of a federal agency, particularly so suddenly, "is unprecedented and contrary to prior conduct by the same Presidential Administration between 2016 and 2020, when the Presidential Administration routinely discussed and campaigned on the anticipated elimination of the Department of Education but did not, and still has not, followed through on that policy directive." Dkt. 7 at Fifth Affirmative Defense.

As background, on January 13, 27, and 18, 2025, USAID issued a series of contract modifications adding more than $77 million to Defendant's Contract, sufficiently funding the work for more than six months. Just over a week later, that funding was stripped and the contract and related work shuttered. USAID issued a stop-work order for the contract on January 27, 2025, without prior notice, and ultimately terminated Defendant's contract. Given the size and cost of the contract and the sudden nature of the stop-work order and termination, Defendant's claim that it was impossible for Defendant to give its employees 60 days' notice of termination has support in the record. And, the fact that all Plaintiffs were employed on a federal government contract of a temporary nature, Plaintiffs' claims are risky and subject to substantial defenses.

Importantly, as Defendant has asserted, the WARN Act expressly excludes "temporary" employees—those hired for the duration of a particular project or undertaking, with the understanding that their employment would end when that project concluded. 29 U.S.C. § 2103(1) ("This chapter shall not apply to a plant closing or mass layoff if the closing is of a temporary facility or the closing or layoff is the result of the completion of a particular project or undertaking, and the affected employees were hired with the understanding that their employment was limited to the duration of the facility or the project or undertaking."). By the plain, express terms of the WARN Act, the exception applies where the employee had subjective knowledge at the time of hiring that their employment was for a temporary duration. *Id.*; *see also* 20 C.F.R. § 639.5(c)(2)

("Employees must clearly understand at the time of hire that their employment is temporary."). Defendant relied on this defense not only for liability purposes but to oppose class certification. Given the potential individualized factual considerations associated with the temporary project exception, absent settlement, there was a substantial risk that class certification would have been denied and/or Plaintiffs would have recovered nothing on their claims.

With regard to Defendant's defense of unforeseen business circumstances, Defendant noted in discovery that, on January 13, 17, and 18, 2025, USAID issued three funding modifications providing funding for Defendant's USAID contract, in the total amount of $77,689,395. Given that funding allocation, and based on Defendant's historical run rate, funding of that amount would sufficiently fund Defendant's full contract performance until at least September 30, 2025 (with some missions funded for several months thereafter). Defendant alleges, and produced supporting documentation, that, at the time the funding modifications were issued, USAID (through its contracting officer) gave Defendant no indication that Defendant's contract was in jeopardy in any way, and it is Defendant's understanding that the contract was not, in fact, in jeopardy at that time.

On January 20, 2025, President Trump issued Executive Order No. 14169, *Reevaluating and Realigning United States Foreign Aid*, which required a "*90-day pause in United States foreign development assistance for assessment of programmatic efficiencies and consistency with United States foreign policy.*" Pursuant to EO 14169, and at the direction of the Department of State, on January 27, 2025, at approximately 4:05 p.m., USAID issued a Stop Work Order to Defendant on Defendant's Contract No. 7200AA21N00004. Defendant was instructed to "stop all work under Contract No. 7200AA21N00004 . . . effective immediately . . ." and was informed that the Stop Work Order "applie[d] to all work under the contract." Defendant established these facts by the production of documents in discovery. Defendant contends that it was given no prior warning that

a Stop Work Order may be forthcoming, nor was it provided details about how long the Stop Work Order would last. Defendant further explained that the Stop Work Order was particularly shocking to receive, given, as noted above, that USAID had, within the two weeks immediately prior to the issuance of the Stop Work Order, issued three funding modifications, funding Defendant's contract in the amount of more than $77,000,000, which would fund operations until at least September 30, 2025. Defendant explained that, given the number of employees employed by Defendant on the USAID contract, and the daily cost associated with employing those individuals, which are costs for which Defendant would not be reimbursed by USAID or any other government agency, Defendant was forced to terminate the individuals employed on the USAID contract, and did so via termination notices issued by email and letter on January 28, 2025—that is, the day following the Stop Work Order, which is as soon as possible after the receipt of the Stop Work Order as Defendant could draft the notices and issue them to affected employees. Because the impacted employees were foreign aid workers, Defendant could not place those individuals on other federal contracts (EO 14169 paused foreign development assistance programs).

Given the documentation Defendant provided to support its unforeseen business circumstances defense, there was a significant risk that Defendant would succeed in the litigation and Plaintiffs would recover nothing. In analogous circumstances, the Department of Labor has explained that where government contractors' employees are terminated as a result of government decision making on the contract, there is no WARN Act violation. In 2012, the Department of Labor issued guidance regarding whether government contractors subject to funding allocations must comply with the WARN Act. The Department of Labor explained:

> Questions have recently been raised as to whether the WARN Act requires Federal contractors . . . whose contracts may be terminated or reduced in the event of sequestration on January 2, 2013, to provide WARN Act notices 60 days before that date to their workers employed under government contracts funded from

> sequestrable accounts. The answer to this question is "no." In fact, to provide such notice would be inconsistent with the purpose of the WARN Act. [ ] [I]n the absence of any additional information, potential plant closings or layoffs resulting from such contract terminations or cutbacks are speculative and unforeseeable.
>
> If Federal agencies announce before January 2, or in the wake of sequestration, specific contract terminations or cutbacks that will require contractors to lay off or separate their employees in less than 60 days, such Federal announcements would be sudden and dramatic, and in such cases, consistent with the WARN Act, employers will not have to provide the full period of notice.

*See* U.S. Dep't of Lab., *Training and Employment Guidance Letter No. 3-12*, at 1, 3-4 (July 30, 2012), available at: https://oui.doleta.gov/dmstree/tegl/tegl2k12/tegl_03-12.pdf (last visited June 10, 2026). The Department of Labor guidance presented a substantial risk that all claims by Plaintiffs would be foreclosed and they would recover nothing.

It is also important to note that the WARN Act contains a prevailing party fee-shifting provision, whereby "[i]n any [WARN Act] suit, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." 29 U.S.C. § 2104(a)(6). While attorneys' fees awards against Plaintiffs in WARN Act cases are rare, the fee-shifting provision represented an additional risk to Plaintiffs, in light of the evidence and the record.

By contrast, the proposed Settlement provides guaranteed relief to the Settlement Class without delay and is reasonable, particularly given the inherent risks of continued litigation. As a result, the Settlement's benefits, in combination with the substantial costs and risks inherent in a lengthy trial (and likely subsequent appeal), support a finding that the proposed Settlement benefits are adequate.

***The Anticipated Duration and Expense of Additional Litigation and the Likelihood of Recovery on a Litigated Basis.*** In addition to the substantial risks and uncertainties of continued litigation, the Parties can be assured that any further litigation would be expensive, complex, and time-consuming, and militate in favor of final approval of the Settlement. Stranch Decl. ¶¶ 11–12,

20; *see also Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 26450, at *21 (D.S.C. Feb. 14, 2019) ("There is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation."). Further, the fact that the Settlement eliminates the substantial delay and expense of continued written discovery, depositions, expert witnesses, class certification briefing, summary judgment motions, trial, and likely appeals (a process that could possibly extend for years and might lead to a smaller recovery, if any) strongly weighs in favor of approval. *See, e.g., Robinson v. Nationstar Mortg. LLC*, No. 8:14-CV-03667-TJS, 2020 U.S. Dist. LEXIS 262890, at *10 (D. Md. Aug. 19, 2020) ("Here, as in most class actions, there is risk to both parties in continuing towards trial. The Settlement fairly accounts for that risk."). Accordingly, this factor also weighs in favor of final approval.

***The Solvency of Defendant.*** There is no indication that Defendant will be unable to satisfy a judgment. However, this factor is "largely considered beside the point given the other factors weighing in favor of…approval." *See Solomon v. Am. Web Loan, Inc.*, No. 4:17-cv-145, 2020 U.S. Dist. LEXIS 112782, at *17–18 (E.D. Va. June 26, 2020) (citing *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 494 (S.D. W.Va. 2002)).

***Degree of Opposition to the Settlement.*** In the Fourth Circuit, courts assess the adequacy of a settlement from the perspective of informed class members, as reflected by their opposition—or lack thereof—to the proposed settlement. *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2018 U.S. Dist. LEXIS 13400, at *8 (M.D.N.C. Jan. 4, 2018) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). Although 52 class members elected exclusion, 226 class members remain in the Settlement Class, and only a single class member objected to the Settlement. Admin. Decl. ¶¶ 11–12. No federal circuit has adopted a bright-line opt-out threshold that automatically

precludes settlement approval. Rather, the Fourth Circuit treats the degree of opposition as only one factor in the overall fairness analysis. *Berry,* 807 F.3d at 616. Indeed, a settlement is not rendered unfair or unreasonable merely because some class members oppose it. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159–60. Courts have approved settlements involving comparable or greater levels of opposition. *See, e.g.*, *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803 (3d Cir. 1974); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 317 (W.D. Pa. 1997) (approving settlement and citing *Bryan* for the proposition that objections from approximately 18.1% of the class were not fatal to approval). Most importantly, only one of the 278 Settlement Class Members objected to the Settlement, demonstrating substantial support for the Settlement among participating Class Members.

***The Settlement Provides Excellent Benefits and Treats Class Members Equitably.*** Lastly, the Settlement establishes the $139,000.00 non-reversionary Settlement Fund and is an excellent result for the Settlement Class, as it will confer guaranteed monetary and equitable benefits without the risks inherent in continued litigation. *See generally*, ECF No. 40-4, Settlement Agreement. The Settlement Fund allocation and method of distributing to the Settlement Class are also reasonable. See Fed. R. Civ. P. 23(e)(2)(ii); Stranch Decl. ¶ 16. Each Class Member will receive their *pro rata* share of the Settlement Fund under the Allocation Plan, which is applied to each Class Member as a uniform formula. *Id*. Because of this, the Settlement treats Settlement Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D); Stranch Decl. ¶¶ 7, 16.

***The Adequacy of Class Representatives and Class Counsel.*** After the 2018 amendments, Rule 23(e)(2) requires the court to consider: whether “the class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A) is satisfied because the Class Representatives actively participated in the litigation, communicated with counsel, reviewed case

developments, and assisted in evaluating the Settlement. Stranch Decl. ¶¶ 8–10. Likewise, Class Counsel are experienced class action and WARN Act practitioners who conducted a substantial investigation, reviewed discovery, evaluated Defendant's defenses, and negotiated the Settlement on behalf of the Settlement Class. Id. ¶¶ 4–6, 13. Accordingly, the Class Representatives and Class Counsel have adequately represented the Settlement Class throughout this litigation. Notably, the requested attorneys' fees, costs, and service awards were disclosed in the Class Notice and are subject to separate Court review for reasonableness, further supporting approval under Rule 23(e)(2)(C)(iii). Admin. Decl. ¶ 5 & Ex. A; Stranch Decl. ¶¶ 10, 17–22.

**iii. Final Certification of the Settlement Class Is Appropriate**

The Preliminary Approval Order analyzed the Rule 23(a) and (b)(3) class certification requirements and conditionally certified the Settlement Class for settlement purposes only. ECF No. 41, PageID# 607. Nothing has changed since Preliminary Approval that would affect the Court's granting final certification of the Settlement Class. Consequently, and for the reasons explained in Plaintiffs' Motion for Preliminary Approval, in the Court's Preliminary Approval Order, Class Counsel's corresponding declarations, and reiterated herein, the Settlement Class should be finally certified for settlement purposes.

**B. Class Counsel is Entitled to an Award of Reasonable Attorneys' Fees**

The attorneys' fees in this matter of one-third of the common fund are reasonable. The common-fund doctrine, as applied in this instance, is consistent with the longstanding notion that attorneys often take a substantial risk of receiving no compensation whatsoever. *See generally*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745, 750–51, 62 L. Ed. 2d 676 (1980). Courts are vested with broad discretion in determining permissible attorneys' fees based on a

reasonableness standard. *Hooker v. Sirius XM Radio, Inc.*, No. 4:13–CV–003, 2017 WL 4484258, at *2 (E.D. Va. May 11, 2017).

District courts in the Fourth Circuit largely use the percentage-of-recovery method when determining whether the requested fees are suitable. *In re Altria Grp., Inc.*, No. 3:20CV772 (DJN), 2023 WL 2116803, at *2 (E.D. Va. Feb. 20, 2023) (discussing *Fire & Police Retiree Health Care Fund*, 2020 WL 6826549; *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 757 (S.D.W. Va. 2009). Courts in the Fourth Circuit generally look to the following factors when determining the reasonableness of a fee award under the percentage of the recovery method: (1) the results obtained for the class; (2) the quality, skill and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; (7) public policy; and (8) the amount of time devoted to the case by Plaintiffs' Counsel. *Id (citing Singleton*, 976 F. Supp. 2d at 682; *In re Genworth Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016).

***The Results Obtained for the Class***. " The first and most important factor for a court to consider when making a fee award is the result achieved." *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016); *accord McDonnell v. Miller Oil Co.*, 134 F.3d 638, 641 (4th Cir. 1998). Through Class Counsel's efforts and negotiations, the Settlement provides a non-reversionary Settlement Fund totaling $139,000.00. ECF No. 40-4, PageID 570–71. The Settlement Fund will provide immediate relief to the Class in the form of a cash payment, without requiring the Class Members to take any action. Stranch Decl. ¶¶ 7, 16. This benefit directly addresses the Class Members' harms without requiring further protracted litigation. *Id*. ¶¶ 12, 20. Accordingly, this factor weighs in favor of approving the requested fee.

***The Quality, Skill, and Efficiency of the Attorneys Involved.*** Class Counsel are highly experienced class action litigators with a well-respected reputation in WARN Act litigation. Stranch Decl. ¶ 13, Exh. A (collective resumes of Class Counsel). Class Counsel worked hard and at great risk on behalf of the Settlement Class to obtain information and documents from Defendant regarding the claims at issue and leveraged their experience and knowledge from similar cases to negotiate a favorable Settlement. Stranch Decl. ¶¶ 4–6, 13.

***The Risk of Nonpayment.*** Counsel undertook this case on a contingent basis without any guarantee of success. Cases taken on a contingent basis run a significant risk of no compensation at all. *Lowe v. Mid-Atlantic Coca-Cola Bottling Co.*, 33 Va. Cir. 361, 363 (Va. Cir. Ct. 1994); *see also Gilbert LLP v. Tire Eng'g & Distribution, LLC*, 689 F. App'x 197, 201 (4th Cir. 2017). The practice of counsel taking cases on a contingent-fee basis and seeking a percentage of the recovery as fees is important, as it gives countless plaintiffs access to counsel who might otherwise be unable to afford them. *See In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 46 (4th Cir. 2010) (noting the "significance" of contingency arrangements because "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation," and "transfer a significant portion of the risk of loss to the attorneys taking a case").

***Objection by Class Members to the Fees.*** No objections have been made by Class Members related to the reasonableness of the fees in this case.[1] A lack of objections by class members as to fees requested by counsel is a factor that weighs in favor of the reasonableness of fees. *See Berry*, 807 F.3d at 618–19 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005)); *see also In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 844 (E.D. Va. 2016).

[1] One objection was received, but that rejection only noted an objection to the settlement generally and did not mention any objection to Class Counsel's proposed fee request. Stranch Decl. ¶ 23. Class Counsel's response to the objection is forthcoming as of the date of this filing.

***Awards in Similar Cases.*** In similar cases, courts have found that a one-third award of fees is reasonable. *See, e.g.*, *In re AWTR Liquidation, Inc.*, No. 213-bk-13775-NB Adv., 2013 WL 6859166, at *2 (Bankr. C.D. Cal. Dec. 13, 2013) (concluding one-third fee in WARN Act case was appropriate); *Mees v. Skreened, Ltd.*, No. 2:14-cv-142, 2016 WL 67521, at *5 (S.D. Ohio Jan. 6, 2016) (same); *Guippone v. BH S. & B. Holdings,* LLC, No. 09 Civ. 1029 (CM), 2011 WL 5148650, at *9 (S.D.N.Y. Oct. 28, 2011) ("[I]n more than 30 WARN actions class counsel was awarded a one-third fee."); *Knapp v. Badger Technologies, Inc.*, No. 12–CV–6637–CJS–MWP, 2015 WL 3745303, at *5 (W.D.N.Y. June 15, 2015) (awarding one-third fee in WARN Act case); *Assif v. Titleserv, Inc.*, CV 11-3203 (PKC) (AKT), 2014 WL 12843780, at *12 (E.D.N.Y. Aug. 25, 2014) (same).

***The Complexity and Duration of the Case.*** This matter involved substantial risk, and Plaintiffs faced formidable hurdles if the litigation were to proceed. Stranch Decl., ¶¶ 11–12. Given the documentation Credence provided to support its defense of unforeseeable business circumstances, there was a significant risk that Credence would succeed in the litigation and Plaintiffs would recover nothing. Stranch Decl. ¶¶ 11–12; ECF No. 7, PageID# 39-41 (Defendant's Fifth and Sixth Affirmative Defenses). In analogous circumstances, the Department of Labor has explained that when government contractors' employees are terminated due to government decision-making regarding the contract, there is no WARN Act violation. *See U.S. Dep't of Lab.*, *Training and Employment Guidance Letter No. 3-12*, at 1, 3–4 (July 30, 2012), available at: https://oui.dmstree/tegl/tegl2k12.tegl)03-12.pdf (last visited Jan. 9, 2026).

Additionally, the WARN Act contains a prevailing party fee-shifting provision, whereby "[i]n any [WARN Act] suit, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." 29 U.S.C. § 2104(a)(6). While attorneys' fee awards against

Plaintiffs in WARN Act cases are rare, the fee-shifting provision, when considered in light of the evidence and the record, poses an additional risk to Plaintiffs and favors settlement. *See, e.g.*, *Guippone v. BH S&B Holdings LLC*, No. 09 CIV. 01029 (CM), 2016 WL 5811888, at *4 (S.D.N.Y. Sept. 23, 2016) ("[t]he Settlement reflects the recognition by the parties that there are significant, complex issues regarding the application of the WARN Acts and the various cases and regulations interpreting the WARN Acts as the facts of the case."); *Chambers v. Groome Transp. of Ala., Inc.*, No. 3:14CV237-CSC (WO), 2015 WL 9255332, at *3 (M.D. Ala. Dec. 17, 2015) ("[c]ompletion of this action through continued litigation would be extremely complex….[]…and the settlement simplifies resolution of the disputes. A full trial would last several days and include numerous witnesses.").

***Public Policy.*** Public policy supports the requested fee award. Courts consider the risk of nonpayment and the difficulty of the case in evaluating this factor. *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 482 (D. Md. 2014). Here, Defendant had a strong unforeseeable business circumstances defense based on the sudden DOGE-related termination of the USAID contract and its prompt notice to employees the next day. Had Defendant prevailed on that defense, Plaintiffs and Class Counsel would have recovered nothing. Because Class Counsel undertook this case on a contingent basis despite substantial litigation risk, the requested fee award furthers the public policy of encouraging experienced counsel to pursue meritorious class actions where recovery is uncertain. *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009).

***The Amount of Time Devoted by Plaintiff's Counsel.*** When analyzing the reasonableness of fees in a percentage-of-recovery scenario, courts often look to the lodestar cross-check. *McCune v. Faneuil Inc.*, No. 4:23-CV-41, 2024 WL 3811411, at *3 (E.D. Va. Aug. 13, 2024). The court need not exhaustively scrutinize the attorneys' hours, but a cross-check is a valuable data point to

help ensure that the requested fees are reasonable. *Id.* Although, a lodestar cross-check is not required when the percentage-of-recovery method is used, *see Manuel v. Wells Fargo Bank, Nat'l Ass'n,* No. 3:14cv238 (DJN), 2016 U.S. Dist. LEXIS 33708, at *14 (E.D. Va. Mar. 15, 2016), courts that do conduct them "have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Singleton*, 976 F. Supp. 2d at 689 (citation omitted); *see also Decohen*, 299 F.R.D. at 483 (awarding multiplier of 3.9); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006) (awarding a 2.57 multiplier).

Here, a cross-check validates Class Counsel's fee request. Class Counsel has dedicated over 75 hours to date in this case and has incurred $55,500.00 under the lodestar. Stranch Decl. ¶ 21. This results in a lodestar multiplier of 0.83, given the fee request of $45,870.00, which is well within this Court's determination of reasonableness. *Id; see also, e.g., In re Lumber Liquidators,* 27 F.4th 291, 301–307 (4th Cir. 2022) (affirmed fee award with 0.82x negative multiplier); *Ciarciello v. Bioventus Inc.*, 760 F. Supp. 3d 377, 401–402 (M.D.N.C. 2024) (approved 0.82 multiplier); *Feinberg v. T. Rowe Price*, 610 F. Supp. 3d 758, 773 (D. Md. 2022) (approved negative multipliers of 0.42 and 0.73, noting that "Courts in this Circuit routinely approve lodestar multipliers that are much higher."); *Kirkpatrick v. Cardinal Innovations*, 352 F. Supp. 3d 499, 507 (M.D.N.C. 2018) (approved 0.58 multiplier). Given the substantial litigation risks presented by Defendant's defenses, the discovery conducted, the settlement negotiations undertaken, and the result achieved for the Settlement Class, the requested fee is reasonable and should be awarded.

**C. Class Counsel's Costs are Reasonable and Should be Awarded**

Under Rule 23(h), a trial court may award nontaxable costs authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). "Reimbursement of reasonable costs and expenses to counsel who create a common fund is both necessary and routine." *Savani v. URS Prof'l Solutions LLC*, 121 F. Supp. 3d 564, 576 (D.S.C. 2015). "The prevailing view is that expenses are awarded

in addition to the fee percentage." *Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772, at *20 (D. Md. Jan. 28, 2020) (citations and quotation marks omitted). Class Counsel respectfully requests that the Court reimburse expenses of $715.80 in costs, and award $8,000.00 in costs for the Administration of the Settlement. *See* Stranch Decl. ¶ 22; Admin. Decl. ¶ 18. These costs were reasonable and incurred for the benefit of the Class and therefore should be reimbursed. Stranch Decl. ¶ 22.

### D. The Proposed Service Awards are Reasonable

"Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry,* 807 F.3d at 613 (internal quotation marks and citation omitted). Much like attorneys' fees, service awards to representative Plaintiffs must also be reasonable. *Casa de Md., Inc. v. Arbor Realty Tr., Inc.*, No. DKC 21-1778, 2024 U.S. Dist. LEXIS 41935, at *33 (D. Md. Mar. 11, 2024). Service awards equal to 1.75% of the total fund have been found to be reasonable. *Id*. Each Plaintiff in this case receives a $500.00 service award (ECF No. 40-4, PageID 571), which together total 1.08% of the total Settlement Fund—well below the 1.75% the Court previously found reasonable. The Court should therefore approve the request for Service Awards.

## V. <u>CONCLUSION</u>

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members significant immediate relief. For the reasons discussed above, and for those described in the Motion for Preliminary Approval and Plaintiffs' Motion for Attorneys' Fees, and Service Awards, Plaintiffs respectfully request this Court enter the Final Approval Order, certify the Settlement Class, appoint Class Counsel and Plaintiffs as representatives for the

Settlement Class, grant Final Approval of this Settlement, and award Service Awards, attorneys' fees, and expenses.

DATED: June 10, 2026

*/s/ J. Gerard Stranch, IV*

J. Gerard Stranch, IV (TN BPR #23045)
Samuel Gladney (MO Bar# 69094)
**STRANCH, JENNINGS & GARVEY PLLC**
223 Rosa Parks Ave., Suite 200
Nashville, TN 37203
Telephone: 615/254-8801
Facsimile: 615/255-5419
gstranch@stranchlaw.com
sgladney@stranchlaw.com

Lynn A. Toops
Ian R. Bensberg
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
ltoops@cohenandmalad.com
ibensberg@cohenandmalad.com

Raina C. Borrelli
Samuel J. Strauss
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave., Suite 1610
Chicago, IL 60611
872-263-1100
Fax: 872-263-1109
Email: raina@straussborrelli.com

*Counsel for Plaintiffs and the Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing has been served upon all counsel of record via the Court's CM/ECF system on this the 10th day of June, 2026.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (TN BPR # 23045)